CHARLES B. PERKINS #126942
FLYNN, ROSE & PERKINS
59 North Santa Cruz Avenue, Suite Q
Los Gatos, California 95030
(408) 399-4566

Attorneys for Plaintiff
GARY HATFIELD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY HATFIELD,<br><br>            Plaintiff,<br><br>vs.<br><br>HARTFORD LIFE GROUP INSURANCE COMPANY; ALSIDE, INC. EMPLOYEE BENEFIT PLAN; ASSOCIATED MATERIALS INCORPORATED dba ALSIDE, INC.;<br><br>            Defendants. | Case No. C07 03682 HRL<br><br>FIRST AMENDED COMPLAINT<br>(*29 U.S.C. §1132(a)(1)(b)*) |

Plaintiff alleges:

1. Plaintiff Gary Hatfield is, and at all times mentioned herein was, a resident of the County of San Mateo, State of California, in the above-captioned judicial district.

2. Defendant Hartford Life Group Insurance Company (hereinafter "Hartford") is a corporation organized and existing under and by virtue of the laws of the State of Connecticut, and is an insurance company duly authorized to transact the business of insurance in the State of California.

3. Defendant Alside Inc. Employee Benefit Plan (hereinafter "Benefit Plan") is an employee benefit plan established pursuant to the Employee Retirement Income Security Act of 1974, 29 *USC § 1001, et seq.* ("ERISA").

/////

FIRST AMENDED COMPLAINT (*29 U.S.C. §1132*)
Case No. C07 03682 HRL
Page 1

4. Defendant Associated Materials Incorporated, dba Alside Inc. (hereinafter "Alside Inc.") is the plan sponsor of the Benefit Plan.

5. The Benefit Plan provides benefits to plan beneficiaries in the above-captioned judicial district.

6. Venue is proper under *29 U.S.C. §1170(c)*, as Defendants may be found in this district, and as Plaintiff resides in San Mateo County.

7. This court has original jurisdiction of this matter under *29 U.S.C. §1132(e)* as an action brought pursuant to *29 U.S.C. §1132(a)(1)(B)*.

8. Plaintiff is employed by Alside, Inc., and is a beneficiary of the Benefit Plan.

9. On or about May 1, 1963, Alside, Inc. was issued a Group Accidental Death and Dismemberment Policy (hereinafter "Initial Policy") underwritten by Continental Casualty Company.

10. Following the adoption of ERISA (29 USC §1001, et seq.), the Benefit Plan came into existence by operation of law, and the Initial Policy became part of the Benefit Plan.

11. The Initial Policy does not designate a specific administrator; therefore, pursuant to 29 USC §1002(16)(a)(ii), Alside, Inc. is the Plan Administrator.

12. On or about November 20, 2000, Plaintiff enrolled as a participant in the Benefit Plan. Plaintiff obtained coverage under the Initial Policy for himself in the amount of $200,000.00, and for his wife, Diana Hatfield (hereinafter "Diana") in the amount of $100,000.00. Plaintiff was named as the beneficiary of Diana's coverage.

13. On or about April 9, 2004, Plaintiff's employer, Alside, Inc. received notice from Hartford that it is now the underwriter for the Group Accidental Death and Disability Policy providing benefits under the Benefit Plan. The notice stated that all other policy provisions would remain the same.

14. Diana suffered from frequent severe migraine headaches. Her physicians provided her with various prescription medications and also instructed her in the use of non-prescription medications to assist in coping with her headaches. On occasion, she would require the injection of additional medications for pain control. These injections were provided by her physicians at

Palo Alto Medical Clinic.

15.	On the evening of May 5, 2004, Diana was found dead in the Hatfield home. Earlier in the evening of May 5, 2004, Diana had received injections of Dilaudid and Vistaril at the Palo Alto Medical Clinic.

16.	Earlier on May 5, 2004, prior to receiving the injections of Dilaudid and Vistaril, Diana had taken a non-prescription sleep aid at the direction of her physicians.

17.	Toxicology tests conducted after Diana's death revealed the presence of the non-prescription sleep aid, as well as the Dilaudid and Vistaril from the injections. All three substances were found in concentrations that were in excess of normal therapeutic levels, with the Vistaril being the most in excess of normal therapeutic levels at 2.375 times the high range of therapeutic and well into the toxic range.

18.	Diana's death was ruled to be accidental by the San Mateo County Coroner.

19.	Plaintiff filed a claim for accidental death benefits under the Benefit Plan.

20.	On or about August 5, 2005, The Hartford denied Plaintiff's claims for accidental death benefits for the death of his wife, Diana. Based on the presence of the non-prescription sleep aid, the denial asserted an exclusion for "injuries sustained while the Covered Person is under the influence of drugs, unless taken as prescribed by a Doctor." This exclusion is not contained in the Initial Policy.

21.	Further correspondence revealed that Hartford contends that the Initial Policy had allegedly been replaced by a policy that was allegedly effective as of June 1, 2003 (hereinafter the "Subsequent Policy"). The Subsequent Policy has the same policy number as the Initial Policy, but it is otherwise very different. The Initial Policy only has 5 exclusions, but the Subsequent Policy has 10 exclusions, including the exclusion for injuries sustained while the Covered Person is under the influence of drugs, unless taken as prescribed by a doctor, which is not found in the Initial Policy. The Subsequent Policy also states that the Plan Administrator has delegated sole discretionary authority to C.N.A. Group Life Insurance Company, which has been replaced by Hartford.

22.	The alleged replacement of the Initial Policy with the Subsequent Policy was a

material modification to the terms of the Benefit Plan, with a new plan year commencing on June 1, 2003, the date that the Subsequent Policy allegedly became effective.

23. Based on correspondence between Plaintiff and Hartford, Hartford contends that Alside, Inc. adopted the subsequent policy based on a document signed by David Campbell, General Counsel of Alside, Inc., dated May 21, 2003.

24. Since a material modification to the Benefit Plan had allegedly occurred in the plan year prior to the plan year in which the Subsequent Policy became effective, pursuant to *29 U.S.C. §§ 1022(a)(1) and 1024(b)(1),* Defendants had a duty to give notice of that alleged material modification promptly, and no later than December 31, 2003.

25. Prior to the August 5, 2005 denial, Defendants failed to give notice to Plaintiffs or any other Plan beneficiaries, that the Plan terms had been changed by the alleged replacement of the Initial Policy with the Subsequent Policy.

26. Plaintiff appealed from the denial of his claim. He provided information from his employer, Alside, Inc. that it had not received a copy of the Subsequent Policy and therefore, it believed that the Initial Policy was in force at the time of Diana's death. He also advised Hartford that even if the Subsequent Policy was in force, the exclusion did not apply because Diana had ingested the non-prescription sleep aid at the direction of her treating physician.

27. Hartford denied Plaintiff's appeal and mailed notice of the denial to him on or about November 28, 2005.

28. Hartford's denial of Plaintiff's appeal asserted that the Subsequent Policy was in force at the time of Diana's death, and that the exclusion for "injuries sustained while the Covered Person is under the influence of drugs, unless taken as prescribed by a Doctor" applied. Despite the fact that Hartford has the burden of proving that the exclusion applied, Hartford offered no proof that the non-prescription sleep aid found in Diana Hatfield's body was not taken as prescribed by a Doctor, or that it contributed to her death, as opposed to the toxic concentration of Vistaril.

29. Plaintiff has exhausted his administrative remedies.

30. The benefits provided pursuant to the Initial Policy and/or the Subsequent Policy

are insured by Hartford. Decisions respecting payment of benefits due under the Initial Policy and/or the Subsequent Policy, and responses to appeals of denials of benefits, are made by Hartford. Hartford is identified as the Plan Administrator for insured claims made under the Subsequent Policy.

31. Plaintiff's claim should be reviewed by the Court *de novo* because the Benefit Plan does not grant discretion to Hartford.

32. If the Court finds that this claim should be reviewed pursuant to the "abuse of discretion" standard, the Court should apply a heightened scrutiny to Hartford's actions because this is an insured plan, creating an inherent conflict of interest.

33. Hartford's denials of Plaintiff's claim and appeals were made in bad faith.

34. Plaintiff's claim for Accidental Death benefits should be decided pursuant to the terms of the Initial Policy, and not pursuant to the terms of the Subsequent Policy, for one or more of the following reasons:

(a) Plan terms can only be changed by the Plan Administrator; Alside, Inc. was the Plan Administrator for the Benefits Plan; Alside, Inc., acting as Plan Administrator, never adopted the terms of the Subsequent Policy; therefore, the terms of the Benefit Plan are as stated in the Initial Policy.

(b) The alleged amendment of the Benefit Plan by substituting the terms of the Subsequent Policy for the Initial Policy is void because it was made arbitrarily and capriciously because it was never adopted by the Plan Sponsor, and because no notice of the change was given to beneficiaries of the Benefit Plan.

(c) Undisclosed modifications to the terms of the Benefit Plan cannot be enforced.

(d) The alleged replacement of the Initial Policy by the Subsequent Policy, and the failure to give notice thereof, was a breach of fiduciary duty, and Defendants should be estopped or otherwise precluded from arguing that the terms of the Benefit Plan are other than as set forth in the Initial Policy.

35. As a result of the actions of Defendants, and each of them, as above alleged, Plaintiff has been deprived of Accidental Death benefits in the amount of $100,000.00.

36. Pursuant to *29 U.S.C. 1132(a)(1)(B)*, Plaintiff brings this action to recover benefits due to him under the terms of the Benefit Plan.

37. Plaintiff is entitled to attorneys' fees and costs pursuant to *29 U.S.C. §1132(g)(1)*.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

1) For an Order requiring Defendants to pay Accidental Death benefits in the amount of $100,000.00 to Plaintiff for the accidental death of his wife, Diana Hatfield, and interest on said benefits from August 5, 2005 until payment thereof;

2) For reasonable attorneys' fees and costs; and

3) For such other and further relief as the Court may deem just and proper.

DATE: October 1, 2007                    FLYNN, ROSE & PERKINS


                                         By_____/s/ Charles B. Perkins__
                                              CHARLES B. PERKINS
                                              Attorney for Plaintiff
                                              GARY HATFIELD